IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| **Carolyn L. McKenzie,** | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:03-2908-12 |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| **Carolina Care Plan, Inc.,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

     This matter is before the Court on the plaintiff Carolyn L. McKenzie's request for the reversal of defendant Carolina Care Plan, Inc.'s decision to deny coverage of a cochlear implant. The parties have stipulated that the Court may decide the case based upon the administrative record and the briefs submitted in support of their respective positions. After reviewing the evidence presented and the briefs submitted by the parties, the Court, pursuant to Rule 52 of the Federal Rules of Civil Procedure, makes the following Findings of Fact and Conclusions of Law:

**Findings of Fact**

    **1.**  The plaintiff suffers from profound bilateral sensorineural hearing loss. In December 2002, the plaintiff went to the Medical University of South Carolina Cochlear Implant Center ("MUSC") for evaluation as a candidate for a cochlear implant. As part of the evaluation, the plaintiff had to undergo a ct-scan and other physical tests. At the time, the plaintiff was covered by the defendant's Employee Retirement Income Security Act ("ERISA") health plan, which approved and paid for the ct-scan and the other related tests.

**2.**  Thereafter, the plaintiff and MUSC sought approval for the cochlear implant from the defendant, but the defendant determined that such a device was excluded under two exclusions: (1) a cochlear implant is a hearing aid; and (2) a cochlear implant is a "[d]evice[] and computer[] to assist in communication and speech."

**3.**  The plaintiff then commenced this breach of contract action in state court; the case was then removed to this Court pursuant to the preemption of ERISA.  On May 20, 2004, the parties entered into a Consent Order that permitted the plaintiff to submit additional documents in support of her claim for a cochlear implant to the appeal board for the defendant.

**4.**  The appeal board reviewed the plan administrator's file and the additional documents submitted on behalf of the plaintiff.  The appeal board then upheld the decision to deny coverage on the basis that a cochlear implant is a device that assists in communication and speech.

**5.**  The exclusion provision at issue here, "[d]evices and computers to assist in communication and speech," is listed under the "Comfort or Convenience" heading within the exclusion section, which provides:

> **Section 2: What's Not Covered - - Exclusions**
> **B. Comfort or Convenience**
> 1. Television.
> 2. Telephone.
> 3. Beauty/Barber service.
> 4. Guest service.
> 5. Supplies, equipment and similar incidental services and supplies for personal comfort.  Examples include:
>    — Air conditioners.
>    — Air purifiers and filters.
>    — Batteries and battery charges.

    — Dehumidifiers.

    — Humidifiers.

6. Devices and computers to assist in communication and speech.

**6.** The exclusion section also contains a heading labeled "Vision and Hearing" which provides:

### Section 2: What's Not Covered - - Exclusions
#### Q. Vision and Hearing

1. Purchase cost of eye glasses, contact lenses, or hearing aids.
2. Fitting charge for hearing aids, eye glasses or contact lenses.
3. Eye exercise therapy.
4. Radial keratotomy.
5. Laser and other refractive eye surgery.

**7.** At the time the plan administrator denied the claim, it had received letters and documents submitted by and on behalf of the plaintiff that dispute that a cochlear implant is a hearing aid and a device that assists communication and speech. The letters and documents describe the cochlear implant as an auditory prosthesis that requires the insertion of an internal device in the cochlea (in the inner ear) and the placement of an external device (processor) behind the recipient's ear. The processor receives sounds and encodes the sounds into electrical signals, which are sent to the internal device which stimulates the auditory nerves in the brain. Consequently, the recipient is able to decipher sounds into recognizable speech.

**8.** In his letter submitted on behalf of the plaintiff, Dr. Novak explains that the exclusion provision relating to "devices and computers to assist in communication and speech" refers to augmentative communication devices for people who are aphasic or have no speech but

satisfactory hearing.  He states that these devices and computers assist people who can think of words, but are not able to express words so they point to a picture on a computer and the device speaks the word.  Dr. Novak also advises that augmentative communication devices do not play a role in the process of hearing.

9.  The evidence presented by the plaintiff describes augmentative communication as pertaining to manual communication (sign language), communication boards, and electronic or computer-based communication such as synthetic voice technology.

10.  The plaintiff's evidence also supports the position that a cochlear implant is a prosthetic device used to replace or restore the auditory nerve function in the cochlea that was inoperative or malfunctioning.  The plaintiff's evidence states that the Centers for Medicare and Medicaid Services provide coverage for and have defined cochlear implants as prosthetic devices in the coverage issues manual.  The plaintiff notes that the policy specifically covers a prosthetic device, which is to replace a limb or body part, and that the function of a cochlear implant is to replace or restore the cochlea.

11.  In opposition to the plaintiff's evidence, the defendant relies upon the plain meaning of the words in the exclusion provision to conclude that cochlear implants are devices which assist in communication and speech.

12.  Pursuant to the terms of the Consent Order dated May 20, 2004, the plaintiff had the right to and did reinstitute her claim with this Court.  Thereafter, the plaintiff and defendant submitted briefs in support of their respective positions.

13.  On January 20, 2005, the Court issued an order finding that the defendant abused its discretion and directing the defendant to provide appropriate coverage for the plaintiff's cochlear

implant.

**14.**  On January 31, 2005, the defendant filed a motion to alter or amend the judgment.

**15.**  On May 6, 2005, the Court granted the motion to amend, withdrew its order of January 31, 2005, and ordered the parties to submit additional evidence concerning the cost of the cochlear implant and the defendant's conflict of interest.

**16.**  On June 6, 2005, the parties submitted additional information in support of their respective positions.

**17.**  On June 16, 2005, the defendant replied to the plaintiff's submission.

**18.**  On June 20, 2005, the plaintiff filed a response to the defendants's reply.

**19.**  The total cost for a cochlear implant including the surgery, cochlear implant device, and rehabilitation, is between $30,000 and $60,000.  This surgery is fairly rare.

### Standard of Review

Courts interpret ERISA plans by applying principles of trust law.  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109-11 (1989).  Under the common law of trusts, courts generally review administrators' decisions de novo.  See id.  But an ERISA plan is also a contractual document.  See id.; Booth v. Wal-Mart Stores, Inc., 201 F.3d 335, 340 (4th Cir. 2000).  If the plan grants a fiduciary discretionary authority  to administer claims or define plan terms, the Court will review the fiduciary's decision for an abuse of that discretion.  See Booth, 201 F.3d at 341.  Whether a plan grants a fiduciary discretionary authority is a matter of contract interpretation, to be decided de novo by the Court.  See id.

When the abuse of discretion standard of review applies, the Court "should not disturb an

administrator's decision if reasonable." See Crosby v. Crosby, 986 F.2d 79, 83 (4th Cir. 1993). But if a fiduciary to whom discretionary authority has been granted operates under a conflict of interest, the Court must "not act[] as deferentially as would otherwise be appropriate." See Bynum v. Cigna Healthcare of North Carolina, Inc., 287 F.3d 305, 311 (4th Cir. 2002). In the case of a conflict of interest, then, the standard of review should be somewhere in between abuse of discretion and de novo. See Doe v. Group Hospitalization & Medical Services, 3 F.3d 80, 87 (4th Cir. 1993). The amount of deference in this middle region is determined by the extent of the conflict; that is, the degree of deference the Court will give the insurer's interpretation of the plan is in an inverse relationship with the extent of the conflict of interest. See id. In other words, the Court should reduce its deference "to the degree necessary to neutralize any untoward influence resulting from the conflict." Baily v. Blue Cross & Blue Shield of VA, 67 F.3d 53, 56 (4th Cir. 1995).

In Booth, the Fourth Circuit set out a non-exclusive list of factors a Court may examine under the abuse of discretion standard of review:

> (1) the language of the plan; (2) the purpose and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it might have.[1]

Booth, 201 F.3d at 342-43. The Court should examine these factors to determine if the administrator's decision was "reasonable" under the circumstances. See Crosby, 986 F.2d at 83.

---

[1] A conflict of interest is both a consideration that lessens the deference under the standard of review and a factor in deciding whether the defendant has abused its discretion. See Booth, 201 F.3d at 343 fn. 2.

To wit, the administrator's decision must be consistent with a decision undertaken without the conflict of interest.  See Doe, 3 F.3d at 87.

In addition, this Court is to assess the reasonableness of the administrator's decision "based on the facts known to it at the time."  Booth, 201 F.3d at 39.  The Court may only consider evidence in the record that was before the administrator when the decision was made.

Finally, any ambiguous clause in the insurance contract is to be construed against the insurer, and in accordance with the reasonable expectations of the insured.  See Bynum, 287 F.3d at 313-14.

## Conclusions of Law

**A.**  The plan language here provides that, "[defendant has] sole and exclusive discretion to do all of the following:  Interpret Benefits under the Policy, Interpret the other terms, conditions, limitations and exclusions set out in the Policy . . . [and] Make factual determinations related to the Policy and its Benefits."  This language gives the defendant discretionary authority to rule on claims applications and interpret exclusions.  Accordingly, this Court reviews the denial of coverage under an abuse of discretion standard.

**B.**  The defendant, however, is operating under a conflict of interest because it, as both the insurer and plan administrator, has a financial interest in the outcome of its decision.  See Doe, 3 F.3d at 87.  Consequently, the level of deference normally afforded to the plan administrator's discretion is reduced; and the more objectively reasonable the decision must be; and the more substantial the evidence must be to support it.  See Bynum, 287 F.3d at 311.

**C.**  When determining whether an insurance contract provides coverage, it is important to

look at the entire policy in order to discern the intent of the parties. First, the plan nowhere mentions cochlear implants. Second, the phrase "devices and computers to assist in communication and speech" is not defined or explained in the policy. The defendant has apparently accorded a broad meaning to this phrase in denying coverage. On the other hand, the plaintiff has submitted much evidence refuting this position and supporting a more restrictive meaning to the exclusion. While not relying upon Dr. Novak, or any of said evidence for that matter, to interpret the policy language at issue, the Court does note that the administrator had before it evidence that contradicts the defendant's interpretation of the contract.

**D.** Upon examining the exclusion at issue, the Court is struck by the items listed under the "Comfort or Convenience" heading within the exclusion section, which provides:

> **Section 2:  What's Not Covered - - Exclusions**
> **B.  Comfort or Convenience**
> 1. Television.
> 2. Telephone.
> 3. Beauty/Barber service.
> 4. Guest service.
> 5. Supplies, equipment and similar incidental services and supplies for personal comfort. Examples include:
>    — Air conditioners.
>    — Air purifiers and filters.
>    — Batteries and battery charges.
>    — Dehumidifiers.
>    — Humidifiers.
> 6. Devices and computers to assist in communication and speech.

By looking at the entire list under "Comfort or Convenience," it is clear that a cochlear implant does not fit within that realm. This list of items refers to products that serve to provide

8

comfort or convenience, not to something like a cochlear implant which requires the surgical implantation of an artificial part into the body and permits the body to function in a manner in which it otherwise could not.  Moreover, it is telling that communication and speech are mentioned, whereas hearing is not.

     **E.**  Furthermore, the exclusion section contains another heading labeled "Vision and Hearing" which provides:

> **Section 2:  What's Not Covered - - Exclusions**
> **Q.  Vision and Hearing**
> 1.  Purchase cost of eye glasses, contact lenses, or hearing aids.
> 2.  Fitting charge for hearing aids, eye glasses or contact lenses.
> 3.  Eye exercise therapy.
> 4.  Radial keratotomy.
> 5.  Laser and other refractive eye surgery.

Here, the defendant provided a "Vision and Hearing" exclusion heading which failed to specifically exclude cochlear implants.  Instead, in an attempt to deny coverage, the defendant broadly interpreted a provision under the "Comfort or Convenience" heading to exclude a cochlear implant.  Such an expansive interpretation is clearly at odds with the other items excluded as comfort or convenience items.

     **F.**  This internal inconsistency is highlighted by the fact that hearing aids are specifically excluded under the "Vision and Hearing" section.  If the phrase "devices and computers to assist in communication and speech" is broad enough to exclude a cochlear implant, then certainly it excludes hearing aids, yet the plan specifically excludes hearing aids elsewhere.  This further supports the conclusion that the defendant's broad reading of the exclusion does not represent

the intent of the parties.

      **G.** The end result is the determination that the phrase "devices and computers to assist in communication and speech" is ambiguous. The policy makes no effort to define or explain the provision, even though it is susceptible to multiple definitions. Depending upon how broadly or restrictively one defines the provision, it can mean different things in various contexts. Consequently, both broad and narrow meanings of the phrase are reasonable, and each could be used in a manner consistent with its plain and ordinary meaning.

      **H.** When interpreting an ERISA health insurance plan, the Court must apply the usual principles of contract law. See Bynum, 287 F.3d at 313. According to the doctrine of *noscitur a sociis*, the meaning of a term or phrase may be ascertained by reference to the words associated with it. As the Supreme Court has said,

> It is a familiar rule in the construction of terms to apply to them the meaning naturally attaching to them from their context. Noscitur a sociis is a rule of construction applicable to all written instruments. Where any particular word is obscure, or of doubtful meaning, taken by itself, its obscurity or doubt may be removed by reference to associated words; and the meaning of a term may be enlarged or restrained by reference to the object of the whole clause in which it is used.

Wharton v. Wise, 153 U.S. 155, 169 (1894).

      **I.** Accordingly, the Court applies the doctrine of *noscitur a sociis* to determine the meaning of the ambiguous phrase "devices and computers to assist in communication and speech." Upon examination of the entire "Comfort or Convenience" exclusion section, it is apparent that the plaintiff's narrow meaning attributed to the exclusion phrase is appropriate because comfort and convenience items, like telephones and televisions, are more similar to augmentative communication devices, such as communication boards and electronic or

computer-based communication like synthetic voice technology, than with a surgical procedure such as a cochlear implant.

**J.**  Furthermore, applying the doctrine of *contra proferentum*, the Court must construe any ambiguity in the phrase's ordinary meaning against the insurer, and in accordance with the insured's reasonable expectations.  See Bynum, 287 F.3d at 314.  In so doing, this Court limits the exclusion provision "devices and computers to assist in communication and speech" to those items that refer to augmentative communication, such as communication boards and electronic or computer-based communication like synthetic voice technology.

**K.**  The Court concludes that the defendant abused its discretion in denying coverage for the plaintiff's cochlear implant because the defendant's broad interpretation of the ambiguous exclusion provision is not objectively reasonable and is not supported by substantial evidence.

The Court therefore finds that the exclusion relied upon by the defendant does not apply and hereby orders the defendant to provide appropriate coverage for the plaintiff's cochlear implant.

**AND IT IS SO ORDERED**.

_____
**C. WESTON HOUCK**
**UNITED STATES DISTRICT JUDGE**

July 25, 2005
Charleston, South Carolina